UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **PANKAJ TOPIWALA** | * | |
| 5840 Banneker Road, Ste. 230 | | |
| Columbia, Maryland 21044 | * | |
| | | |
| and | * | |
| | | |
| **FASTVDO LLC** | * | |
| 5840 Banneker Road, Ste. 230 | | |
| Columbia, Maryland 21044 | * | **Civil Action No.:** _____ |
| | | |
| and | * | **JURY TRIAL DEMANDED** |
| | | |
| **PARAMOUNT INTERNATIONAL** | * | |
| **HOLDING, LLC** | | |
| c/o Pankaj Topiwala | * | |
| 5840 Banneker Road, Ste. 230 | | |
| Columbia, Maryland 21044 | * | |
| | | |
| **Plaintiffs,** | * | |
| | | |
| v. | * | |
| | | |
| **KEVIN WILLIAM WESSELL** | * | |
| 28015 Smyth Drive | | |
| Santa Clara, CA 91355 | * | |
| | | |
| 23404 Lyons Avenue | * | |
| Suite 223 | | |
| Newhall, California 91321 | * | |
| | | |
| and | * | |
| | | |
| **MATT MITCHELL** | * | |
| **A/K/A PAUL MATTHEW HESSE** | | |
| 28015 Smyth Drive | * | |
| Santa Clara, CA 91355 | | |
| | * | |
| 23404 Lyons Avenue | | |
| Suite 223 | * | |
| Newhall, California 91321 | | |
| | * | |
| and | | |

**COMPANIES INCORPORATED**          *
Serve on Kevin W. Wessell
28015 Smyth Drive                          *
Santa Clara, CA 91355
                                           *

23404 Lyons Avenue
Suite 223                                  *
Newhall, California 91321
                                           *
       **Defendants.**
                                           *
_____
                                           *

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, Pankaj Topiwala ("Mr. Topiwala"), FastVDO LLC ("FastVDO"), and Paramount International Holdings, LLC ("Paramount") (collectively, "Plaintiffs"), by and through their undersigned counsel, hereby file this Complaint against Defendants, Companies Incorporated, Kevin William Wessell ("Mr. Wessell"), and Matt Mitchell a/k/a Paul Matthew Hesse ("Mr. Mitchell") (collectively, "Defendants"), and in support thereof respectfully state as follows:

## THE PARTIES

1.      Plaintiff, Mr. Topiwala, is the sole member, manager and Chief Executive Officer of FastVDO and is also the sole member and manager of Paramount. Mr. Topiwala is a resident of the State of Florida.

2.      Plaintiff, FastVDO, is a limited liability company organized under the laws of the State of Florida, with its principal place of business in Columbia, Maryland. FastVDO delivers enabling technologies in image processing and video compression to enable rich media communications at a variety of bandwidths.

2

3.      Plaintiff, Paramount, is a foreign corporation organized under the laws of Nevis. Paramount was organized on Mr. Topiwala's behalf by Companies Incorporated to, *inter alia*, hold certain intellectual property and conduct business with FastVDO.

4.      Defendant, Companies Incorporated, has a principal place of business located at 28015 Smyth Drive, Santa Clara, California, and is not a Maryland corporation.   Companies Incorporated transacts business in the State of Maryland.

5.      Defendant, Mr. Wessell, is an individual conducting business in the State of Maryland and residing in the State of California.   Mr. Wessell is the Chief Executive Officer of Companies Incorporated.

6.      Defendant, Mr. Mitchell, is an individual conducting business in the State of Maryland and residing in California.   Mr. Mitchell is a senior consultant of Companies Incorporated.

## JURISDICTION AND VENUE

7.      Pursuant to 28 U.S.C. § 1331, § 22 of the Securities Act of 1933, § 27 of the Securities Exchange Act of 1934, this Court has subject matter jurisdiction over this action.

8.      Pursuant to 28 U.S.C. § 1332, this Court has subject matter jurisdiction based on diversity of citizenship because Plaintiffs and Defendants are citizens of different states, and the amount in controversy exceeds the sum or value of Seventy-Five Thousand Dollars ($75,000.00).   This Court has jurisdiction over Defendants, who are nonresidents, because they purposely availed themselves of the privileges and benefits of engaging in business in Maryland. Further, Defendants have committed numerous torts, which are the subjects of this suit, in whole or in part in Maryland.

4810-7989-2744

9.     Pursuant to 28 U.S.C. § 1391(d), § 22 of the Securities Act of 1933, and § 27 of the Securities Exchange Act of 1934, venue in this judicial district is proper because many of the acts and practices complained of herein occurred in substantial part in this judicial district.

10.    In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, interstate telephone communications and electronic mail.

## FACTS COMMON TO ALL COUNTS

### The Parties' Relationship Begins

11.    In January 2009, FastVDO entered into a patent license agreement in which FastVDO received in excess of $5,500,000.00 (the "IP Proceeds").  Mr. Topiwala and FastVDO sought to maintain the IP Proceeds so that the taxes that would be due fifteen (15) months later -- in April 2010 -- could be paid.

12.    In January 2009, Mr. Topiwala began considering tax planning alternatives that would best protect FastVDO's and his intellectual property and preserve the IP Proceeds as the financial markets in the United States were in turmoil.

13.    In January 2009, Mr. Topiwala saw an internet advertisement by Companies Incorporated, which stated, *inter alia*, that Companies Incorporated (i) was a trusted provider of business filing, incorporating, limited liability company and corporation formation services; and (ii) offered complete filing support, including: drafting of articles of incorporation, delivery and filing with government offices, the preparation of tax forms for all entity types, corporate records management, annual reports and meeting minutes, as well as corporate kits, and seals.

14.    In January 2009, Mr. Topiwala contacted Companies Incorporated to discuss the possibility of Companies Incorporated opening an offshore company that would hold certain

4810-7989-2744

intellectual property so that Mr. Topiwala could conduct future business in a tax favorable jurisdiction.

15.     Mr. Topiwala spoke with Mr. Wessell and Mr. Mitchell at Companies Incorporated.

16.     During Mr. Topiwala's conversations with Mr. Wessell and Mr. Mitchell, Mr. Topiwala told them that, in addition to seeking to open an offshore company to hold certain intellectual property, he was seeking tax planning advice, and that he was trying to determine how to securely manage the IP Proceeds until the taxes due on the IP Proceeds were paid.

**Defendants' Misrepresentations and Omissions of Material Fact**

17.     Defendants, and in particular Mr. Wessell, presented themselves to Mr. Topiwala and FastVDO as experts on tax matters, and Mr. Wessell, in fact, taught classes on the topic.

18.     During numerous conversations with Defendants, Mr. Topiwala and FastVDO had their accountant, Joe Schmelzle ("Mr. Schmelzle"), take part in Mr. Topiwala's and FastVDO's teleconferences with Defendants, and both Mr. Topiwala and Mr. Schmelzle asked Defendants tax-related questions with respect to the IP Proceeds.

19.     After these discussions, Defendants incorporated Paramount for the express purpose of facilitating Mr. Topiwala's and FastVDO's ability to conduct business in a tax favorable jurisdiction.

20.     In or about January 2009, Defendants also suggested that, with regard to the IP Proceeds, the Plaintiffs take advantage of a risk free one-year certificate of deposit account with an interest rate of five per cent (5%).

4810-7989-2744

21.     Specifically, Defendants advised the Plaintiffs that the IP Proceeds should be placed in an interest-bearing savings account with The Alps Credit Union Ekonomisk förening ("The Alps Credit Union").

22.     In or about February 2009, as well as on numerous other occasions through and continuing until March 4, 2010, the Plaintiffs explicitly asked Defendants if they had any involvement or association with The Alps Credit Union.

23.     The Plaintiffs also specifically sought information on the management, total assets, and business history of The Alps Credit Union.

24.     In or about February 2009, as well as on numerous other occasions through and continuing until March 4, 2010, Defendants explicitly represented to the Plaintiffs that there were no associations or involvement between them and The Alps Credit Union.

25.     Defendants also provided no information on the management or business history of The Alps, claiming that as a private credit union, such information was not available.

26.     However, in or about February 2009, Defendants confirmed for the Plaintiffs that The Alps Credit Union was a reputable credit union and that Defendants had previous customers who had satisfactorily deposited funds with The Alps Credit Union.

27.     The Defendants advised the Plaintiffs that all funds deposited in The Alps Credit Union were actually held at the reputable and publicly-traded Bank Von Tobel in Switzerland.

28.     In this way, the Plaintiffs were deliberately led to understand that the security of the deposit rested on the strength of a well-known Swiss bank.

29.     The Plaintiffs were given literature on the financial disclosures of Bank Von Tobel.

4810-7989-2744

30.     Mr. Wessell also claimed that he personally had substantial funds deposited with The Alps Credit Union, and that it was a safe place to maintain the IP Proceeds

31.     Prior to the IP Proceeds being deposited with The Alps Credit Union, however, Defendants failed to reveal and withheld from the Plaintiffs the fact that Mr. Wessell was a founder and the current Chief Executive Officer of The Alps Credit Union or that Mr. Mitchell was a founder of The Alps Credit Union.

32.     Mr. Wessell also failed to reveal to Plaintiffs that The Alps Credit Union was not in fact a credit union, but rather an unregulated private business organization that Mr. Wessell and Mr. Mitchell had created.

**The eSavings Agreement and eSavings Account with The Alps Credit Union**

33.     On February 3, 2009, Companies Incorporated emailed the Plaintiffs the forms necessary to open an "eSavings" account with The Alps Credit Union.

34.     The physical address listed for The Alps Credit Union on the account opening documents and on its website, www.alpscreditunion.com, was World Trade Center, Klarabergsviadukten 70, Stockholm, Sweden.

35.     In reliance on the Defendants' representations regarding The Alps Credit Union, Paramount, on behalf of Mr. Topiwala and FastVDO, entered into a twelve (12) month e-Savings Agreement (the "eSavings Agreement") with The Alps Credit Union, pursuant to which Plaintiffs were promised an annual percentage yield of five per cent (5%) on the deposit of $5,500,000.00.

36.     On March 4, 2009, pursuant to the eSavings Agreement, Mr. Topiwala and FastVDO deposited the IP Proceeds into Paramount's assigned account (the "eSavings

4810-7989-2744

Account") with The Alps Credit Union (with a $60 wire-in charge, the account opened at $5,499,940.00).

37.     Pursuant to the eSavings Agreement, the Plaintiffs were entitled to withdraw the IP Proceeds, including accrued interest, from the eSavings Account after twelve (12) months, *i.e.* on March 4, 2010.

**More Misrepresentations and Omissions by Defendants**

38.     After entering into the eSavings Agreement and opening the eSavings Account, the Plaintiffs attempted to make inquiries to The Alps Credit Union regarding the status of the eSavings Account and the posting of interest accruing on the funds deposited in the eSavings Account.

39.     Surprisingly, rather than hearing back from The Alps Credit Union, Companies Incorporated, primarily through Mr. Wessell and Mr. Mitchell, responded to all of the Plaintiffs' inquiries.

40.     Significantly, the Plaintiffs never contacted by anyone who was identified as being associated with The Alps Credit Union.

41.     In November 2009, in order to verify that the IP Proceeds were deposited with The Alps Credit Union, Mr. Topiwala, on behalf of FastVDO and Paramount, personally visited the Geneva, Switzerland branch of Bank Von Tobel.

42.     At that time, however, the Plaintiffs were unable to verify that The Alps Credit Union had any account at the Bank Von Tobel or whether the IP Proceeds in the eSavings Account were with the Bank Von Tobel.

4810-7989-2744

43.     The Plaintiffs attempted to contact The Alps Credit Union several times both by phone and email while in Geneva, including from the offices of Bank Von Tobel while in meeting with a senior bank executive.

44.     All of the Plaintiffs' efforts to reach The Alps Credit Union while Mr. Topiwala was in Geneva, however, were fruitless.

45.     The Plaintiffs' inability to obtain any information regarding his eSavings Account from the Bank Von Tobel was later dismissed by Mr. Wessell and Mr. Mitchell as just standard Swiss banking policies, and further advised the Plaintiffs that such policies were for their own protection.

**The Truth Begins to Emerge and The Alps Credit Union Defaults on its Obligations**

46.     On or about March 1, 2010, pursuant to the eSavings Agreement, Plaintiffs instructed The Alps Credit Union to liquidate the eSavings Account and return his deposit plus all accrued interest at the one-year maturity date.

47.     Over the next few days, Plaintiffs made numerous attempts to contact The Alps Credit Union regarding disbursement of the funds in the eSavings Account.

48.     All responses to these inquiries, however, including various excuses as to why payment could not be made, came from Mr. Wessell and Mr. Mitchell at Companies Incorporated, not The Alps Credit Union.

49.     On March 2, 2010, the Plaintiffs received an email from Mr. Mitchell, wherein Mr. Mitchell stated that The Alps Credit Union did not have sufficient assets to allow it to disburse the funds deposited into the eSavings Account and the accrued interest thereon.

50.     Specifically, Mr. Mitchell advised the Plaintiffs that The Alps Credit Union did not have sufficient assets to allow it to disburse the funds to the Plaintiffs because The Alps

4810-7989-2744

Credit Union had engaged in short-term real estate loans designed to correspond with the withdrawal date on the eSavings Account.

51.     As represented by the Defendants, their scheme went awry when these loans were not repaid by the borrower(s) on a timely basis.

52.     This was the first time that the Plaintiffs learned that The Alps Credit Union may have made real estate loans using the IP Proceeds to finance real properties in the United States.

53.     Under no circumstances would the Plaintiffs have thought that financing real estate transaction in the United States was a secure and reasonable way to protect the IP Proceeds, and they never would have agreed to deposit the IP Proceeds in The Alps Credit Union if they had any idea that those funds would be used for such speculative and risky investments.

54.     In his March 2, 2010 email, Mr. Mitchell also advised the Plaintiffs that The Alps Credit Union was pursuing the borrowers on the real estate loans that it had made.

55.     In his March 2, 2010 email, Mr. Mitchell further advised the Plaintiffs that The Alps Credit Union was looking to sell the real property that secured the eSavings Account so that The Alps Credit Union could pay the Plaintiffs' deposit plus the interest accrued thereon.

56.     In the email to the Plaintiffs, Mr. Mitchell also stated that The Alps Credit Union

will do what is in their power to be sure that you have your funds.  Some possible options are:

    1. The credit union can transfer the subject properties to you.
    2. The credit union can transfer the subject loans to you.
    3. You can wait until the properties sell and the sales proceeds will be sent to an account of your choice.

Please understand that we care about your situation.  You can communicate with us throughout the process until your funds are secured.

57.     On March 3, 2010, the Plaintiffs spoke with Mr. Wessell via telephone.  During their conversation, Mr. Wessell represented to the Plaintiffs that the size of the portfolio of The Alps Credit Union "might be about 14 million dollars."

58.     On March 4, 2010, Mr. Wessell contacted the Plaintiffs twice via telephone, including once late at night.

59.     During their March 4, 2010 conversations, Mr. Wessell told the Plaintiffs that he had forced The Alps Credit Union to wire $2,500,000.00 from the Bank Von Tobel in Switzerland to Mr. Topiwala on March 5, 2010.

60.     Mr. Wessell did not explain to the Plaintiffs how he had such direct knowledge of, and was able to exert such influence over, The Alps Credit Union, if, as he had previously stated, Defendants had no involvement or association with The Alps Credit Union.

61.     Mr. Wessell also provided the Plaintiffs with the names and addresses of the individuals that he claimed were the "Directors" of The Alps Credit Union – despite the fact that that Defendants had previously represented to the Plaintiffs that Defendants had no association with The Alps Credit Union.

62.     Mr. Wessell also identified for the Plaintiffs specific real properties in the United States that he claimed The Alps Credit Union owned or in which it otherwise had security interests.

63.     Mr. Wessell further represented to the Plaintiffs that he had seen such real properties in person.

64.     Upon information and belief, the funds deposited into the eSavings Account were used by Defendants and/or The Alps Credit Union as part of a pool of funds deployed in a

speculative and highly risky scheme to finance various real properties in the United States and/or for the individual Defendants' own personal benefit.

65.     At all relevant times, however, Defendants failed to advise and, in fact, falsely represented to the Plaintiffs the true nature of the inter-relationship between Defendants and The Alps Credit Union.

66.     the Plaintiffs made numerous requests to Defendants for an accounting of the exact use and disposition of the funds deposited into the eSavings Account, but all such requests were ignored.

67.     On March 4, 2010, when the Plaintiffs questioned Mr. Wessell and Mr. Mitchell as to why Companies Incorporated was communicating with Defendants rather than The Alps Credit Union, they told the Plaintiffs that The Alps Credit Union was talking to Mr. Wessell, that the Alps Credit Union acknowledged that it owed the remaining balance, and that The Alps Credit Union was working to make the Plaintiffs whole.

68.     Surprisingly, during their conversation, Mr. Wessell -- in an apparent effort to mollify the Plaintiffs -- further stated that (i) the inability to retrieve the funds was simply the result of bad timing and that in three to six months Defendants would recover all of Mr. Topiwala's money; (ii) Mr. Topiwala's going to Stockholm would be waste of time as there was "nothing there," and that  Mr. Wessell could instead take Mr. Topiwala to see the properties in the United States; (iii) Mr. Wessell did not want to have law enforcement searching his offices; and (iv) Mr. Wessell loved his wife and kids and would rather "jump off a bridge" than not be able to see them again.

69.     Despite the Plaintiffs instruction, after first defaulting altogether on the eSavings Agreement at the date of maturity, The Alps Credit Union paid the Plaintiffs only part of the then current balance (which was $5,778,836.87 as of March 4, 2010) in the eSavings Account.

70.     The Alps Credit Union continues to owe the Plaintiffs $2,778,836.87, excluding interest accrued after March 4, 2010.

**The Alps Credit Union is a Sham**

71.     In late March 2010, the Plaintiffs discovered, through their own investigation, that despite what was stated on The Alps Credit Union's website, the eSavings Account opening documents, the eSavings Agreement, and the Defendants' representations and omissions, The Alps Credit Union had neither a physical office nor a mailbox located in the World Trade Centre in Stockholm, Sweden.

72.     According to the World Trade Centre's own rules, a company needs to have an office in the building in order to have a mailbox there.

73.     Despite its representation that it had, at all relevant times, an office at the World Trace Centre in Stockholm, the Plaintiffs discovered that this was an outright falsehood and a lie, as The Alps Credit Union does not have an office in the World Trade Centre building.

74.     Upon information and belief, the Alps Credit Union is nothing more than a sham.

75.     Indeed, in late March 2010, the Plaintiffs discovered that (i) The Alps Credit Union was registered at the Swedish Companies Registration Office on May 15, 2006; (ii) on May 15, 2006, the registered board members of The Alps Credit Union were Mr. Wessel, Mr. Hesse (a/k/a Mr. Mitchell), and Filip Strebl ("Mr. Strebl"), and the service recipient was Björn Arne Roxendal; (iii) on May 21, 2007, Panagiotis Savva and Stylianos Stylianou in Cyprus, Greece were registered as new board members for The Alps Credit Union, replacing Mr. Wessel

13

and Mr. Hesse, Mr. Strebl was re-elected as aboard member, and Göran Ragnar Hasselquist ("Mr. Hasselquist") was registered as the new service recipient on the same date; and (iv) Mr. Hasselquist is active as a service recipient in the following economic associations, as well as being a board member in Craton AB, a Swedish corporation.

- European Trustees and Fiduciaries Association Ekonomisk förening
- Century Savings & Loan Ekonomisk förening
- Credit Efficiency United Ekonomisk förening
- Nordic Merchant Credit Union Ekonomisk förening
- European Credit & Trust Ekonomisk förening
- Golden FX Capital Markets Ekonomisk förening
- Nordiskt Ljus Credit Union Ekonomisk förening
- Nordic Savings & Trust Credit Union Ekonomisk förening
- EP Savings and Loans EF Ekonomisk förening
- Prime Savings & Loans Ekonomisk förening

76.     Each of the foregoing economic associations, including The Alps Credit Union, has the same service recipient address: Brevia 882, 114 79 Stockholm, which appears to be a mailbox located at Frejgatan 13, in Stockholm.

77.     Each of the foregoing economic associations bear the name of "Ekonomisk förening" in its title -- in what is effectively a loophole in Swedish law, an entity with that in its title is simply an unregulated private business entity, regardless of what else it may represent itself to be.

78.     The boards of directors of four of the economic associations identified above consist of the following individuals: Berroa Maradiaga, Gaitan Menchaca in Madrid, Spain and Robert Morales in Panama City, Panama.

4810-7989-2744

79.     Mr. Hasselquist has also been active in ninety-nine (99) companies, fifty-two (52) of which have been declared bankrupt.

80.     The Alps Credit Union is a sham and shell organization, and Defendants operated it as their alter ego for their benefit and advantage, in that the Defendants have exercised dominion and control over The Alps Credit Union, and the Defendants and The Alps Credit Union have so intermingled their personal and financial affairs that Defendants are the alter ego of The Alps Credit Union.

81.     The Defendants, as the alter ego of The Alps Credit Union, have been conducting, managing and controlling the affairs of The Alps Credit Union since its formation, as though it were Defendants' own business, and have used The Alps Credit Union for the purpose of defrauding and deceiving, *inter alia*, the Plaintiffs and converting their property, as set forth herein.

**Defendants' Scienter**

82.     Defendants' false representations and material omissions were made with scienter in that Defendants (1) knew or recklessly disregarded that the representations and material omissions made or disseminated by Defendants were materially false and misleading as described above; (2) knew or were reckless in not knowing that the false representations and material omissions would be issued or disseminated to the Plaintiffs; and (3) knowingly and substantially participated in the preparation and/or issuance or dissemination of such statements and omissions.

83.     Each Defendant is liable, jointly and severally, as a participant in a fraudulent scheme and course of business that operated as a fraud and deceit on the Plaintiffs by disseminating materially false and misleading statements and/or concealing material adverse facts.

4810-7989-2744

84.     Defendants had a duty to disseminate accurate and truthful information with respect to their own and The Alps Credit Union's operations, business, and management, and to correct any previously issued statements from any source that had become untrue, and to disclose any facts that would materially affect the Plaintiffs' transaction with The Alps Credit Union.

85.     Each Defendant had the requisite motive and opportunity to commit or participate in the acts alleged herein by virtue of their positions, relationship with The Alps Credit Union and because of the significant monetary benefits they stood to gain from The Alps Credit Union's transaction with the Plaintiffs.

86.     The scheme enabled Defendants to (i) deceive the Plaintiffs regarding The Alps Credit Union's business, investment practices, and organization; (ii) enabled Defendants to steal from the Plaintiffs by offering the eSavings Agreement and eSavings Account to the Plaintiffs under false pretenses.

**The Plaintiffs' Reliance on Defendants' Representations and Material Omissions**

87.     The Plaintiffs would not have entered into the eSavings Agreement, opened the eSavings Account, or deposited funds into the eSavings Account had they known, *inter alia*, (i) of the inter-relationship between Defendants and The Alps Credit Union, (ii) that The Alps Credit Union was not a reputable credit union but, rather, a sham organization; or (iii) that the funds deposited into the eSavings Account would be as part of a pool of funds deployed in a speculative and highly risky scheme to finance various real properties in the United States and/or for the individual Defendants' own personal benefit.

**COUNT I**
**(Fraud)**

88.     Plaintiffs hereby incorporate by reference the foregoing paragraphs of this Complaint as if fully restated herein.

16

89.     As set forth above, Defendants told the Plaintiffs that there were no associations or involvement between Defendants and the sham The Alps Credit Union, which was a false representation of material fact.

90.     Defendants also told the Plaintiffs that the sham The Alps Credit Union was a reputable credit union and that they had customers who had used the sham The Alps Credit Union in the past, which was a false representation of material fact.

91.     Defendants failed to tell the Plaintiffs that the IP Proceeds deposited into the eSavings Account were going to be used by The Alps Credit Union and/or Defendants to purchase real properties in the United States, and/or for their own personal benefit.

92.     Defendants knew that the representations were false when they made them, or the representations were made with such reckless disregard for the truth that knowledge of the falsity of the statements can be imputed to the Defendants.

93.     Defendants were desirous of inducing the Plaintiffs to proceed with entering into the eSavings Agreement and opening the eSavings Account with the sham The Alps Credit Union.

94.     Defendants' representations/omissions were made for the purpose of defrauding the Plaintiffs and were made with actual malice.

95.     Defendants' representations/omissions were made with the intention of having the Plaintiffs act and rely on them.

96.     The Plaintiffs relied with justification upon the false representations/omissions when he entered into the eSavings Agreement and opened the eSavings Account with the sham The Alps Credit Union.

4810-7989-2744

97.    The Plaintiffs would not have entered into the eSavings Agreement, opened the eSavings Account, or deposited funds into the eSavings Account had they known, *inter alia*, (i) of the inter-relationship between Defendants and The Alps Credit Union, (ii) that The Alps Credit Union was not a reputable credit union but, rather, a sham organization; or (iii) that the funds deposited into the eSavings Account would be as part of a pool of funds deployed in a speculative and highly risky scheme to finance various real properties in the United States and/or for the individual Defendants' own personal benefit.

98.    As a result of the intentional and false representations by Defendants, the Plaintiffs have suffered damages in the amount of $2,778,836.87, plus accrued interest since March 4, 2010.

99.    Plaintiffs sue the Defendants either as primary participants in the wrongful and illegal conduct charged or as the alter ego of The Alps Credit Union.

**WHEREFORE**, as to this Count, the Plaintiffs respectfully request that judgment be entered in their favor and against Defendants, jointly and severally, and as relief seek the following:

A.    An award to Plaintiffs of monetary damages in the amount of $2,778,836.87;

B.    An award to Plaintiffs for all pre-judgment and/or post judgment interest, and any and all other costs and reasonable attorneys' fees, permitted by contract and/or at law; and

C.    An award to Plaintiffs of punitive damages in the amount of $6,000,000.00;

D.    Any and all other and further relief as justice and its cause require.

<u>**COUNT II**</u>
**(Negligent Misrepresentation)**

100.    Plaintiffs hereby incorporate by reference the foregoing paragraphs of this Complaint as if fully restated herein.

4810-7989-2744

101.   As set forth above, Defendants told the Plaintiffs that there were no associations or involvement between Mr. Wessell, Mr. Mitchell, or Companies Incorporated, and the sham The Alps Credit Union, which was a false representation of material fact.

102.   Defendants also told the Plaintiffs that The Alps Credit Union was a reputable credit union and that they had customers who had used The Alps Credit Union in the past, which was a false representation of material fact.

103.   Defendants failed to tell the Plaintiffs that the funds deposited with The Alps Credit Union were going to be for the individual Defendants' own personal benefit.

104.   Defendants owed a duty of care to the Plaintiffs, which required transmittal of accurate information from Defendants to the Plaintiffs.

105.   The foregoing statements/omissions by Defendants were false.

106.   These false representations/omissions were repeated on numerous occasions.

107.   Defendants' negligent statements/omissions were made with the intent of having the Plaintiffs rely and act on them.

108.   Defendants were desirous of having the Plaintiffs enter into the eSavings Agreement and open the eSavings Account with The Alps Credit Union.

109.   Defendants knew that the Plaintiffs would rely upon and were, in fact, relying upon Defendants' negligent statements/omissions and that the Plaintiffs would incur damage as a direct result of that reliance.

110.   The Plaintiffs relied with justification upon the false representations/omissions when the Plaintiffs entered into the eSavings Agreement and opened the eSavings Account with The Alps Credit Union.

111.    The Plaintiffs would not have entered into the eSavings Agreement, opened the eSavings Account, or deposited funds into the eSavings Account had they known, *inter alia*, (i) of the inter-relationship between Defendants and The Alps Credit Union, (ii) that The Alps Credit Union was not a reputable credit union but, rather, a sham organization; or (iii) that the funds deposited into the eSavings Account would be as part of a pool of funds deployed in a speculative and highly risky scheme to finance various real properties in the United States and/or for the individual Defendants' own personal benefit.

112.    As a result of the Defendants negligent misrepresentations/omissions, the Plaintiffs have suffered damages in the amount of $2,778,836.87, plus accrued interest since March 4, 2010.

113.    Plaintiffs sue the Defendants either as primary participants in the wrongful and illegal conduct charged or as the alter ego of The Alps Credit Union.

**WHEREFORE**, as to this Count, the Plaintiffs respectfully request that judgment be entered in their favor and against Defendants, jointly and severally, and as relief seek the following:

A.      An award to Plaintiffs of monetary damages in the amount of $2,778,836.87;

B.      An award to Plaintiffs for all pre-judgment and/or post judgment interest, and any
and     all other costs and reasonable attorneys' fees, permitted by contract and/or at law;
        and

C.      Any and all other and further relief as justice and its cause require.

**COUNT III**
**(Conversion/Wrongful Detention)**

114.    Plaintiffs hereby incorporate by reference the foregoing paragraphs of this Complaint as if fully restated herein.

4810-7989-2744

115.    On March 4, 2009, the Plaintiffs deposited the IP Proceeds into the eSavings Account with The Alps Credit Union.

116.    Such funds were to be held in a segregated account.

117.    The Plaintiffs have demanded the return of the funds from The Alps Credit Union and from Defendants, but their demand has been refused.

118.    Defendants conspired with The Alps Credit Union to convert the funds.

119.    The retention of the funds was intentional, without justification, and constituted a conversion of the funds.

120.    As a result of Defendants' conversion of the funds, the Plaintiffs have suffered damages in the amount of $2,778,836.87, plus accrued interest since March 4, 2010.

121.    The Plaintiffs sue the Defendants either as primary participants in the wrongful and illegal conduct charged or as the alter ego of The Alps Credit Union.

**WHEREFORE**, as to this Count, the Plaintiffs respectfully request that judgment be entered in their favor and against Defendants, jointly and severally, and as relief seek the following:

A.      An award to Plaintiffs of monetary damages in the amount of $2,778,836.87;

B. and   An award to Plaintiffs for all pre-judgment and/or post judgment interest, and any all other costs and reasonable attorneys' fees, permitted by contract and/or at law; and

C.      Any and all other and further relief as justice and its cause require.

**COUNT IV**
**(Deceptive Trade Practices)**

122.    Plaintiffs hereby incorporate by reference the foregoing paragraphs of this Complaint as if fully restated herein.

4810-7989-2744

123.    In or about February 2009, Defendants told the Plaintiffs that there were no associations or involvement between Mr. Wessell, Mr. Mitchell, or Companies Incorporated, and The Alps Credit Union.

124.    Defendants also told the Plaintiffs that The Alps Credit Union was a reputable credit union and that they had customers who had satisfactorily deposited funds with The Alps Credit Union in the past.

125.    Defendants failed to tell the Plaintiffs that that the funds deposited into the eSavings Account would be as part of a pool of funds deployed in a speculative and highly risky scheme to finance various real properties in the United States and/or for the individual Defendants' own personal benefit.

126.    When Defendants made such misrepresentations/omissions, they knew that such statements/omissions were false and/or misleading.

127.    The Plaintiffs would not have entered into the eSavings Agreement, opened the eSavings Account, or deposited funds into the eSavings Account had they known, *inter alia*, (i) of the inter-relationship between Defendants and The Alps Credit Union, (ii) that The Alps Credit Union was not a reputable credit union but, rather, a sham organization; or (iii) that the funds deposited into the eSavings Account would be as part of a pool of funds deployed in a speculative and highly risky scheme to finance various real properties in the United States and/or for the individual Defendants' own personal benefit.

128.    Relying on such misrepresentations/omissions by Defendants, the Plaintiffs entered into the eSavings Agreement, opened the eSavings Account with The Alps Credit Union, and deposited funds into the eSavings Account.

4810-7989-2744

129.    By making such representations/omissions to the Plaintiffs, Defendants committed unfair and deceptive traded practices in violation of §13-303 of the Maryland Consumer Protection Act.

130.    As a result of Defendants' actions, the Plaintiffs have suffered damages in the amount of $2,778,836.87, plus accrued interest since March 4, 2010.

131.    The Plaintiffs sue the Defendants either as primary participants in the wrongful and illegal conduct charged or as the alter ego of The Alps Credit Union.

**WHEREFORE**, as to this Count, Plaintiffs respectfully request that judgment be entered in their favor and against Defendants, jointly and severally, and as relief seek the following:

A.    An award to Plaintiffs of monetary damages in the amount of $2,778,836.87;

B. and    An award to Plaintiffs for all pre-judgment and/or post judgment interest, and any all other costs and reasonable attorneys' fees, permitted by contract and/or at law; and

C.    An award to Plaintiffs of punitive damages in the amount of $6,000,000.00;

D.    Any and all other and further relief as justice and its cause require.

**COUNT V**
**(Violation of Maryland Securities Act §§ 11-401(a), 11-402(a), 11-703(a)(1)(i), 11-703(c)(a))**

132.    Plaintiffs hereby incorporate by reference the foregoing paragraphs of this Complaint as if fully restated herein.

133.    This Count does not sound in fraud.

134.    The Plaintiffs sue the Defendants either as the primary participants in the wrongful and illegal conduct or as controlling persons of The Alps Credit Union within the meaning of § 11-703(c) of the Maryland Securities Act.

4810-7989-2744

135.    By reason of their positions, Defendants directly or indirectly had the power and authority to cause, and did in fact cause, The Alps Credit Union to engage in the wrongful conduct complained of herein.

136.    Defendants were, at all relevant times, broker-dealers or agents as defined in § 11-101 of the Maryland Securities Act, engaged in the business of effecting transactions in securities of the account of others or representing The Alps Federal Credit Union in effecting or attempting to effect the same.

137.    While acting individually and on behalf of The Alps Credit Union, Defendants solicited the Plaintiffs for the purpose selling the eSavings Account to them.

138.    On March 4, 2009, Defendants negotiated and sold the eSavings Account to Plaintiffs.

139.    The eSavings Account is a security as defined by § 11-101(r) of the Corporations and Associations Article of the Maryland Code.

140.    Defendants offered or sold the eSavings Account by means of untrue statements of material fact and/or omissions of material fact, as described above, necessary to make the statements made, in the light of the circumstances under which they were made, not misleading.

141.    The Plaintiffs would not have entered into the eSavings Agreement, opened the eSavings Account, or deposited funds into the eSavings Account had they known, *inter alia*, (i) of the inter-relationship between Defendants and The Alps Credit Union, (ii) that The Alps Credit Union was not a reputable credit union but, rather, a sham organization; or (iii) that the funds deposited into the eSavings Account would be as part of a pool of funds deployed in a speculative and highly risky scheme to finance various real properties in the United States and/or for the individual Defendants' own personal benefit.

4810-7989-2744

142.     Defendants transacted business in the State of Maryland by effecting Plaintiffs' transaction with The Alps Credit Union.

143.     Defendants were, at all relevant times, not registered as broker-dealers or agents in the State of Maryland in violation of §§ 11-401(a) and 11-402(a) of the Maryland Securities Act.

144.     Plaintiffs have demanded the return of the investment plus accrued interest; Defendants, however, have refused and continue to refuse to repay Plaintiffs in full.

145.     As a result of Defendant's refusal to repay Plaintiffs in full, Plaintiffs have suffered damages in the amount of $2,778,836.87, plus accrued interest since March 4, 2010.

**WHEREFORE**, as to this Count, Plaintiffs respectfully request that judgment be entered in their favor and against Defendants, jointly and severally, and as relief seek the following:

A.     An award to Plaintiffs of monetary damages in the amount of $2,778,836.87;

B.     An award to Plaintiffs for all pre-judgment and/or post judgment interest, and any and all other costs and reasonable attorneys' fees, permitted by contract and/or at law; and

C.     Any and all other and further relief as justice and its cause require.

### COUNT VI
**(Violation of Maryland Securities Act §§ 11-302(c), 11-703(a)(1)(ii), 11-703(a)(1)(3), 11-703(c)(a))**

146.     Plaintiffs hereby incorporate by reference the foregoing paragraphs of this Complaint as if fully restated herein.

147.     The Plaintiffs sue the Defendants either as the primary participants in the wrongful and illegal conduct or as controlling persons of The Alps Credit Union within the meaning of § 11-703(c) of the Maryland Securities Act.

4810-7989-2744

148.    By reason of their positions, Defendants directly or indirectly had the power and authority to cause, and did in fact cause, The Alps Credit Union to engage in the wrongful conduct complained of herein.

149.    At all relevant times, Defendants were investment advisors or investment advisor representatives, as defined in § 11-101(h) of the Maryland Securities Act.

150.    While acting as investment advisors or investment advisor representatives, Defendants directly advised Plaintiffs regarding the eSavings Account.

151.    On March 4, 2009, Defendants negotiated and sold the eSavings Account to Plaintiffs on behalf of The Alps Credit Union.

152.    The eSavings Account is a security as defined by § 11-101(r) of the Corporations and Associations Article of the Maryland Code.

153.    Defendants transacted business in the State of Maryland by effecting Plaintiffs' transaction with The Alps Credit Union.

154.    In their solicitation and/or dealing with Plaintiffs, Defendants knowingly  made untrue statements of material fact, or omitted statements of material fact in violation of § 11-302(c) of the Maryland Securities Act.

155.    In violation of § 11-703(a)(1)(ii) of the Corporations and Associations Article of the Maryland Code Defendants offered or sold the eSavings Account by means of untrue statements of material fact and/or omissions of material fact necessary to make the statements made, as described above, in the light of the circumstances under which they were made, not misleading.

4810-7989-2744

156.     Defendants, acting as investment advisors or investment advisor representatives employed a scheme to defraud Plaintiffs and engaged in acts or a course of business that operated to defraud or deceive Plaintiffs.

157.     The Plaintiffs would not have entered into the eSavings Agreement, opened the eSavings Account, or deposited funds into the eSavings Account had they known, *inter alia*, (i) of the inter-relationship between Defendants and The Alps Credit Union, (ii) that The Alps Credit Union was not a reputable credit union but, rather, a sham organization; or (iii) that the funds deposited into the eSavings Account would be as part of a pool of funds deployed in a speculative and highly risky scheme to finance various real properties in the United States and/or for the individual Defendants' own personal benefit.

158.     Plaintiffs have demanded the return of the investment plus accrued interest; Defendants, however, have refused and continue to refuse to repay Plaintiffs in full.

159.     As a result of Defendants' refusal to repay Plaintiffs in full, Plaintiffs have suffered damages in the amount of $2,778,836.87, plus accrued interest since March 4, 2010.

**WHEREFORE**, as to this Count, Plaintiffs respectfully request that judgment be entered in their favor and against Defendants, jointly and severally, and as relief seek the following:

A.       An award to Plaintiffs of monetary damages in the amount of $2,778,836.87;

B.       An award to Plaintiffs for all pre-judgment and/or post judgment interest, and any
and      all other costs and reasonable attorneys' fees, permitted by contract and/or at law;
         and

C.       Any and all other and further relief as justice and its cause require.

<u>**COUNT VII**</u>
**(Violation of Maryland Securities Act §§ 11-501, 11-703(a)(1)(i), 11-703(c)(a))**

160.     Plaintiffs hereby incorporate by reference the foregoing paragraphs of this Complaint as if fully restated herein.

4810-7989-2744

161.   This Count does not sound in fraud.

162.   The Plaintiffs sue the Defendants either as the primary participants in the wrongful and illegal conduct or as controlling persons of The Alps Credit Union within the meaning of § 11-703(c) of the Maryland Securities Act.

163.   By reason of their positions, Defendants directly or indirectly had the power and authority to cause, and did in fact cause, The Alps Credit Union to engage in the wrongful conduct complained of herein.

164.   At all relevant times, Defendants acted individually and on behalf of The Alps Credit Union in directing the sale of securities to the public, and in particular, to the Plaintiffs.

165.   While acting individually and on behalf of The Alps Credit Union, Defendants solicited the Plaintiffs for the purpose of selling them the eSavings Account.

166.   On March 4, 2009, Defendants negotiated and sold the eSavings Account to the Plaintiffs.

167.   The eSavings Account is a security as defined by §11-101(r) of the Corporations and Associations Article of the Maryland Code.

168.   Defendants transacted business in the State of Maryland by effecting the Plaintiffs' transaction with The Alps Credit Union.

169.   Prior to the negotiation and sale of the eSavings Account to the Plaintiffs, Defendants had not registered the security with the Office of the Attorney General for the State of Maryland, as required by § 11-501 of the Corporations and Associations Article of the Maryland Code.

170.   At the time of purchase of the eSavings Account, the Plaintiffs received no information regarding The Alps Credit Union and were unfamiliar with the financial resources, standing and condition of The Alps Credit Union.

171.   The Plaintiffs have demanded the return of the investment plus accrued interest; Defendants, however, have refused and continue to refuse to repay the Plaintiffs in full.

172.   As a result, the Plaintiffs have suffered damages in the amount of $2,778,836.87, plus accrued interest since March 4, 2010.

**WHEREFORE**, as to this Count, Plaintiffs respectfully request that judgment be entered in their favor and against Defendants, jointly and severally, and as relief seek the following:

A.   An award to Plaintiffs of monetary damages in the amount of $2,778,836.87;

B. and   An award to Plaintiffs for all pre-judgment and/or post judgment interest, and any all other costs and reasonable attorneys' fees, permitted by contract and/or at law; and

C.   Any and all other and further relief as justice and its cause require.

### COUNT VIII
#### (Violation of Securities Exchange Act of 1934 § 10(b) and Rules 10b-3, 10b-5 Promulgated thereunder)

173.   Plaintiffs hereby incorporate by reference the foregoing paragraphs of this Complaint as if fully restated herein.

174.   The Plaintiffs sue the Defendants either as the primary participants in the wrongful and illegal conduct or as controlling persons of The Alps Credit Union within the meaning of § 20(a) of the Securities Exchange Act.

175.   By reason of their positions, Defendants had the power and authority to cause The Alps Credit Union to engage in the wrongful conduct complained of herein.

4810-7989-2744

176.    Defendants, as broker-dealers or otherwise, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

177.    At the time of these misrepresentations and omissions, the Plaintiffs were ignorant of their falsity, and believe them to be true.

178.    Defendants violated § 10(b) of the Securities Exchange Act and Rules 10b-3 and 10b-5 thereunder, in connection with the eSavings Agreement and eSavings Account as set forth above, in that they, directly or indirectly, by use of any means or instrumentality of interstate commerce or of the mails:

(a)    Employed devices, schemes and artifices to defraud;

(b)    Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made in light of the circumstances under which they were made, not misleading; or

(c)    Engaged in acts, practices and a course of business that operated as a fraud or deceit upon the Plaintiffs.

179.    The Plaintiffs would not have entered into the eSavings Agreement, opened the eSavings Account, or deposited funds into the eSavings Account had they known, *inter alia*, (i) of the inter-relationship between Defendants and The Alps Credit Union, (ii) that The Alps Credit Union was not a reputable credit union but, rather, a sham organization; or (iii) that the funds deposited into the eSavings Account would be as part of a pool of funds deployed in a speculative and highly risky scheme to finance various real properties in the United States and/or for the individual Defendants' own personal benefit.

4810-7989-2744

180.    As a direct and proximate result of Defendants' wrongful conduct, the Plaintiffs have suffered damages in the amount of $2,778,836.87, plus accrued interest since March 4, 2010.

**WHEREFORE**, as to this Count, Plaintiffs respectfully request that judgment be entered in their favor and against Defendants, jointly and severally, and as relief seek the following:

A.      An award to Plaintiffs of monetary damages in the amount of $2,778,836.87;

B.      An award to Plaintiffs for all pre-judgment and/or post judgment interest, and any
and     all other costs and reasonable attorneys' fees, permitted by contract and/or at law; and

C.      Any and all other and further relief as justice and its cause require.

## COUNT IX
### (Violation of Securities Exchange Act of 1934 §§ 15(c)(1), 20(a))

181.    Plaintiffs hereby incorporate by reference the foregoing paragraphs of this Complaint as if fully restated herein.

182.    The Plaintiffs sue the Defendants either as the primary participants in the wrongful and illegal conduct or as controlling persons of The Alps Credit Union within the meaning of § 20(a) of the Securities Exchange Act.

183.    By reason of their positions, Defendants had the power and authority to cause The Alps Credit Union to engage in the wrongful conduct complained of herein.

184.    Defendants, as broker or dealer controlled by, controlling, or under common control with The Alps Credit Union, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

4810-7989-2744

185.   To effect with the Plaintiffs or to induce the Plaintiffs to enter into the eSavings Agreement and open the eSavings Account, Defendants did not disclose to the Plaintiffs that they were controlled by, controlling or under the common control with The Alps Credit Union.

186.   Defendants violated § 15(c)(1) of the Securities Exchange Act.

187.   The Plaintiffs would not have entered into the eSavings Agreement, opened the eSavings Account, or deposited funds into the eSavings Account had they known, *inter alia*, (i) of the inter-relationship between Defendants and The Alps Credit Union, (ii) that The Alps Credit Union was not a reputable credit union but, rather, a sham organization; or (iii) that the funds deposited into the eSavings Account would be as part of a pool of funds deployed in a speculative and highly risky scheme to finance various real properties in the United States and/or for the individual Defendants' own personal benefit.

188.   As a direct and proximate result of Defendants' wrongful conduct, the Plaintiffs have suffered damages in the amount of $2,778,836.87, plus accrued interest since March 4, 2010.

**WHEREFORE**, as to this Count, Plaintiffs respectfully request that judgment be entered in their favor and against Defendants, jointly and severally, and as relief seek the following:

A.   An award to Plaintiffs of monetary damages in the amount of $2,778,836.87;

B. and   An award to Plaintiffs for all pre-judgment and/or post judgment interest, and any all other costs and reasonable attorneys' fees, permitted by contract and/or at law; and

C.   Any and all other and further relief as justice and its cause require.

## COUNT X
### (Violation of Securities Act of 1933 §§ 5(a), 12(a)(1), 15)

189.   Plaintiffs hereby incorporate by reference the foregoing paragraphs of this Complaint as if fully restated herein.

4810-7989-2744

190.    This Count does not sound in fraud.

191.    The Plaintiffs sue the Defendants either as the primary participants in the wrongful and illegal conduct or as controlling persons of The Alps Credit Union within the meaning of § 15 of the Securities Act of 1933.

192.    Defendants directly or indirectly, made use of the any means or instruments or communication in interstate commerce to sell an unregistered security, particularly the eSavings Account and eSavings Agreement to the Plaintiffs.

193.    Defendants directly or indirectly, carried or caused to be carried through the mails or in interstate commerce, by any means or instruments of transportation, an unregistered security, particularly the eSavings Account and eSavings Agreement to the Plaintiffs, for the purpose of sale or for delivery after sale.

194.    Defendants violated §§ 5(a) and 12(a)(1) and of the Securities Act of 1933.

195.    As a direct and proximate result of Defendants' wrongful conduct, the Plaintiffs have suffered damages in the amount of $2,778,836.87, plus accrued interest since March 4, 2010.

**WHEREFORE**, as to this Count, Plaintiffs respectfully request that judgment be entered in their favor and against Defendants, jointly and severally, and as relief seek the following:

A.      An award to Plaintiffs of monetary damages in the amount of $2,778,836.87;

B.      An award to Plaintiffs for all pre-judgment and/or post judgment interest, and any
and     all other costs and reasonable attorneys' fees, permitted by contract and/or at law;
        and

C.      Any and all other and further relief as justice and its cause require.

4810-7989-2744

## COUNT XI
### (Violation of Securities Act of 1933 §§ 12(a)(2), (15))

196.     Plaintiffs hereby incorporate by reference the foregoing paragraphs of this Complaint as if fully restated herein.

197.     This Count does not sound in fraud.

198.     The Plaintiffs sue the Defendants either as the primary participants in the wrongful and illegal conduct or as controlling persons of The Alps Credit Union within the meaning of § 15 of the Securities Act of 1933.

199.     By reason of their positions, Defendants had the power and authority to cause The Alps Credit Union to engage in the wrongful conduct complained of herein.

200.     Defendants offered and/or sold a security, particularly the eSavings Account, by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which included an untrue statement of a material fact or omitted to state a material fact necessary in order to make the statements, in light of the circumstances under which they were made, not misleading.

201.     Defendants knew or should have known that such statements and/or omissions were false or misleading.

202.     Defendants violated § 12(a)(2) of the Securities Act of 1933.

203.     The Plaintiffs would not have entered into the eSavings Agreement, opened the eSavings Account, or deposited funds into the eSavings Account had they known, *inter alia*, (i) of the inter-relationship between Defendants and The Alps Credit Union, (ii) that The Alps Credit Union was not a reputable credit union but, rather, a sham organization; or (iii) that the funds deposited into the eSavings Account would be as part of a pool of funds deployed in a speculative

and highly risky scheme to finance various real properties in the United States and/or for the individual Defendants' own personal benefit.

204.    As a direct and proximate result of Defendants' wrongful conduct, the Plaintiffs have suffered damages in the amount of $2,778,836.87, plus accrued interest since March 4, 2010.

**WHEREFORE**, as to this Count, Plaintiffs respectfully request that judgment be entered in their favor and against Defendants, jointly and severally, and as relief seek the following:

A.      An award to Plaintiffs of monetary damages in the amount of $2,778,836.87;

B. and  An award to Plaintiffs for all pre-judgment and/or post judgment interest, and any all other costs and reasonable attorneys' fees, permitted by contract and/or at law; and

C.      Any and all other and further relief as justice and its cause require.

## COUNT XII
### (Violation of § 206 Investment Advisors Act of 1940)

205.    Plaintiffs hereby incorporate by reference the foregoing paragraphs of this Complaint as if fully restated herein.

206.    Defendants, as investment advisors, disseminated or approved false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

207.    Defendants, acting as investment advisors, violated § 206 of the Investment Advisors Act of 1940 in that they:

(a)     Employed devices, schemes and artifices to defraud the Plaintiffs;

(b)     Engaged in transactions, practices and a course of business that operated as a fraud or deceit upon the Plaintiffs in connection with the eSavings Agreement and eSavings Account.

(c)     Acting as principals for their own account, knowingly sold a security to Plaintiffs, or acting as broker for The Alps Credit Union, knowingly effected the sale of a security to Plaintiffs, without disclosing to Plaintiffs in writing before the completion of such transaction the capacity in which they were acting and obtaining the consent of Plaintiffs to such transaction.

(d)     Engaged in an act, practice or course of dealing that was fraudulent, deceptive or manipulative.

208.    The Plaintiffs would not have entered into the eSavings Agreement, opened the eSavings Account, or deposited funds into the eSavings Account had they known, *inter alia*, (i) of the inter-relationship between Defendants and The Alps Credit Union, (ii) that The Alps Credit Union was not a reputable credit union but, rather, a sham organization; or (iii) that the funds deposited into the eSavings Account would be as part of a pool of funds deployed in a speculative and highly risky scheme to finance various real properties in the United States and/or for the individual Defendants' own personal benefit.

209.    As a direct and proximate result of Defendants' wrongful conduct, the Plaintiffs seek rescission, an accounting and restitution of all money they deposited into the eSavings Account, return of all money Defendants wrongfully obtained and disgorgement of all profits Defendants made due to their conduct in violation of the Investment Advisors Act.

**WHEREFORE**, as to Count XII, the Plaintiffs respectfully request that judgment be entered in their favor and against Defendants, jointly and severally, and as relief seek the following:

4810-7989-2744

A.     Rescission of the eSavings Agreement;

B.     Award the Plaintiffs restitution in the amount of $2,778,836.87 that the Plaintiffs invested with or through the Defendants;

C.     An award to Plaintiff for all pre-judgment and/or post judgment interest, and any and all other costs and reasonable attorneys' fees, permitted by contract and/or at law; and

D.     Any and all other and further relief as justice and its cause require.

## COUNT XIII
**(Violation of California Corporate Securities Law of 1968 §§ 25400, 25500, 25401, 25501, 25504, 25504.1)**

210.    Plaintiffs hereby incorporate by reference the foregoing paragraphs of this Complaint as if fully restated herein.

211.    The Plaintiffs sue the Defendants either as the primary participants in the wrongful and illegal conduct or as controlling persons of The Alps Credit Union within the meaning of § 25504 of the California Corporate Securities Act.

212.    Defendants, as broker-dealers or otherwise offering for sale or selling the eSavings Agreement and eSavings Account to the Plaintiffs, disseminated or approved false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

213.    Defendants violated the California Corporate Securities Law of 1968 in that, in connection with the eSavings Agreement and eSavings Account, they:

(a)     Employed devices, schemes and artifices to defraud or materially assisted in doing so;

37

4810-7989-2744

(b)     Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made in light of the circumstances under which they were made, not misleading or materially assisted in doing so; or

(c)     Engaged in acts, practices and a course of business that operated as a fraud or deceit upon the Plaintiffs or materially assisted in doing so.

214.    The Plaintiffs would not have entered into the eSavings Agreement, opened the eSavings Account, or deposited funds into the eSavings Account had they known, *inter alia*, (i) of the inter-relationship between Defendants and The Alps Credit Union, (ii) that The Alps Credit Union was not a reputable credit union but, rather, a sham organization; or (iii) that the funds deposited into the eSavings Account would be as part of a pool of funds deployed in a speculative and highly risky scheme to finance various real properties in the United States and/or for the individual Defendants' own personal benefit.

215.    As a direct and proximate result of Defendants' wrongful conduct, the Plaintiffs have suffered damages in the amount of $2,778,836.87, plus accrued interest since March 4, 2010.

**WHEREFORE**, as to this Count, Plaintiffs respectfully request that judgment be entered in their favor and against Defendants, jointly and severally, and as relief seek the following:

A.      An award to Plaintiffs of monetary damages in the amount of $2,778,836.87;

B. and      An award to Plaintiffs for all pre-judgment and/or post judgment interest, and any all other costs and reasonable attorneys' fees, permitted by contract and/or at law; and

C.      Any and all other and further relief as justice and its cause require.

4810-7989-2744

## COUNT XIV
### (Civil Conspiracy)

216.     Plaintiffs hereby incorporate by reference the foregoing paragraphs of this Complaint as if fully restated herein.

217.     Defendants and The Alps Credit Union have all conspired to commit the foregoing unlawful and fraudulent acts.

218.     Defendants and The Alps Credit Union conspired to induce the Plaintiffs to enter into the eSavings Agreement, open the eSavings Account, and deposit funds into the eSavings Account

219.     The foregoing claims of fraud, conversion, and violations of the federal and state securities laws resulted in part from this conspiracy.

220.     As a result of the concerted actions of Defendants and The Alps Credit Union, the Plaintiffs have suffered actual legal damage.

**WHEREFORE**, as to this Count, the Plaintiffs respectfully request that judgment be entered in their favor and against Defendants, jointly and severally, and as relief seek the following:

A.     An award to Plaintiffs of monetary damages in the amount of $2,778,836.87;

B.     An award to Plaintiffs for all pre-judgment and/or post judgment interest, and any and all other costs and reasonable attorneys' fees, permitted by contract and/or at law; and

C.     An award to Plaintiffs of punitive damages in the amount of $6,000,000.00;

D.     Any and all other and further relief as justice and its cause require.

## DEMAND FOR JURY TRIAL

The Plaintiffs hereby demand a trial by jury for all issues triable to a jury.

4810-7989-2744

Respectfully submitted,

Dated: _2/28/11_

_Kath B. Hill_

William M. Krulak, Jr. (Fed. Bar No. 26452)
Katherine B. Hill (Fed. Bar No. 27834)
**MILES & STOCKBRIDGE P.C.**
10 Light Street
Baltimore, Maryland 21202
(410) 727-6464
(410) 385-3700 facsimile

4810-7989-2744