IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

PANKAJ TOPIWALA, *et al.*,      *

    Plaintiffs      *

      v.      *      CIVIL NO.: WDQ-11-0543

KEVIN WILLIAM WESSELL, *et al.*,      *

    Defendants.      *

*   *   *   *   *   *   *   *   *   *   *   *   *

MEMORANDUM OPINION

Pankaj Topiwala, FastVDO LLC, and Paramount International Holdings, LLC (collectively "plaintiffs") sued Companies Incorporated, Kevin Wessell, and Matt Mitchell,[1] (collectively "defendants") for securities fraud and other claims. For the following reasons, Wessell and Companies Incorporated's motion to dismiss for failure to join an indispensable party, and the defendants' motion to dismiss for improper venue, will be denied.

I.   Background[2]

In January 2009, FastVDO, a Florida company with its principal place of business in Maryland, received over $5.5

---

[1] Also known as Paul Hesse.  ECF No. 1.

[2] For the motion to dismiss for improper venue, "the facts must be viewed as [the plaintiffs] most strongly can plead them," and "all inferences must be drawn in [the plaintiffs'] favor." *Silo Point II LLC v. Suffolk Const. Co.*, 578 F. Supp. 2d 807, 809 (D. Md. 2008).

million in a patent license agreement ("the IP proceeds").   ECF
No. 1 ¶11.   Topiwala, FastVDO's sole member, manager, and Chief
Executive Officer ("CEO"), sought to invest the IP proceeds in a
way that would protect his intellectual property, enable him to
pay taxes on the IP proceeds in April 2010, and avoid the
turmoil of United States financial markets.   *Id.* ¶¶11-12.

Topiwala responded to an internet ad stating that Companies
Incorporated "was a trusted provider of . . . LLC and
corporation formation services" and provided "complete" filing
and tax support for the entities it formed.   *Id.* ¶¶13-14.
Wessell and Mitchell spoke on behalf of Companies Incorporated.
Topiwala told them he wished to create an offshore company to
hold the intellectual property in a tax-favorable jurisdiction,
sought tax planning advice, and was trying to decide how to
manage the IP proceeds.   *Id.* ¶¶14-16.

The defendants "presented themselves . . . as experts on
tax matters" and said that Wessell taught tax classes.
FastVDO's accountant, Joe Schmelzle, asked tax questions about
the IP proceeds.   *Id.* ¶¶17-18.

The defendants incorporated Paramount International
Holdings ("Paramount") in Nevis to enable Topiwala and FastVDO
to do business in a tax favorable jurisdiction.   *Id.* ¶19.   At
the same time, the defendants suggested that Topiwala invest the
IP proceeds in a risk free one-year certificate of deposit at a

five percent interest rate with the Alps Credit Union ("Alps"). *Id.* ¶¶20-21.

Wessell and Mitchell founded, and Wessell is currently the CEO of, Alps, which is an unregulated business organization, not a credit union. ¶¶31-32.  However, the defendants repeatedly denied being associated with Alps.  *Id.* ¶¶22-24.  Despite the plaintiffs' requests, the defendants stated that information on Alps's management and business history was unavailable, but asserted that Alps "was a reputable credit union and that [the d]efendants had previous customers who had satisfactorily deposited funds with [Alps]."  They said Alps held its funds at "the reputable and publicly-traded Bank Von Tobel in Switzerland," and gave the plaintiffs information about Bank Von Tobel.  *Id.* ¶¶23, 25-27, 29.  Wessell stated that he had personal funds deposited with Alps, and the IP proceeds would be safe there.  *Id.* ¶30.

On March 4, 2009, Topiwala and FastVDO deposited the IP proceeds into an Alps "eSavings" account assigned to Paramount. Companies Incorporated had emailed the eSavings agreement to Topiwala.  The agreement promised that the plaintiffs would receive five percent interest on their 12 month deposit, and they could withdraw the IP proceeds and interest earned on March 4, 2010.  *Id.* ¶¶33, 35-36.

Repeated inquiries about the status of the IP proceeds, directed to Alps, resulted in responses from the defendants. *Id.* ¶¶38-40.  In November 2009, Topiwala visited Bank Von Tobel to ensure the IP proceeds had been deposited, but the bank could not state whether Alps had an account or if the IP proceeds were there.  *Id.* ¶¶41-41.  Topiwala was unable to contact Alps.  ECF No. 1 ¶¶43-44.  Later, Wessell and Mitchell told the plaintiffs that Bank Von Tobel's inability to confirm the account was a result of "Swiss banking policies," in place for the plaintiffs' protection.  *Id.* ¶45.

On March 1, 2010, Topiwala instructed Alps to liquidate the eSavings account on March 4, 2010 pursuant to the agreement, and return the deposit and accrued interest.  The plaintiffs tried to contact Alps several times over the following days, hearing only from Wessell and Mitchell, who made "various excuses as to why payment could not be made."  *Id.* ¶¶46-48.

On March 2, Mitchell emailed the plaintiffs, stating that Alps did not have enough funds to pay the plaintiffs because it had invested the IP proceeds in short term real estate loans that were not repaid, but it was pursuing the borrowers in an attempt to collect the loans.  *Id.* ¶¶49-51, 54.  Mitchell said that Alps was considering selling the property that secured the eSavings account, it would "do what is in [its] power to be sure that you have your funds," and gave the plaintiffs the option of

4

taking the loans or properties instead of waiting until Alps sold the properties to take the proceeds. *Id.* ¶¶55-56.

The plaintiffs would not have deposited the IP proceeds with Alps if they had known they would be used for real estate loans. *Id.* ¶53.

On March 3, Wessell told the plaintiffs by telephone that Alps's portfolio "might be [worth] about 14 million dollars." On March 4, Wessell called Topiwala twice, once late at night. He told him he was forcing Alps to wire $2.5 million from Bank Von Tobel on March 5, 2010. *Id.* ¶¶57-60. Wessell gave the plaintiffs the names and addresses of Alps's directors, identified real property in the United States that Alps owned or in which it had a security interest, and said he had seen the properties. *Id.* ¶¶61-63.

Wessell also said that the defendants would collect the IP funds and interest in three to six months for Topiwala, there was "nothing" at Bank Von Tobel, he could show Topiwala the properties in the United States, and he was concerned about law enforcement investigating him or taking him from his wife and children. *Id.* ¶68.

At some time in March, 2010, Alps paid the plaintiffs $2.5 or $3 million. *Id.* ¶¶69-70.

In late March 2010, the plaintiffs discovered that Alps was not located in Stockholm, Sweden, at the address listed on its

website. *Id.* ¶71. Alps was a registered company in Sweden, and Wessell and Mitchell had been members of Alp's board from its registration in May 2006 until May 2007. *Id.* ¶75.

On February 28, 2011, the plaintiffs sued the defendants in the District of Maryland ("Topiwala's suit").[3] ECF No. 1. On May 3, 2011, Mitchell filed for bankruptcy protection in the United States Bankruptcy Court for the Central District of California. ECF No. 11 Attach. 1.

On May 10, 2011, Companies and Wessell moved to dismiss Topiwala's suit for failure to join an indispensible party. ECF No. 10. The plaintiffs opposed the motion. ECF No. 13. On May 18, 2011, Mitchell filed a complaint in the Bankruptcy Court, naming Topiwala, FastVDO, and Paramount defendants and seeking declaratory relief based on the Alps account and loss of IP proceeds ("the declaratory judgment action"). ECF No. 17 Ex. C.

On June 16, 2011, Mitchell removed Topiwala's suit to the United States Bankruptcy Court for the Central District of California. *In Re Hesse*, No. 11-bk-29314-EC (document dated June 16, 2011). On July 12, United States Bankruptcy Judge

---

[3] The plaintiffs alleged fraud, negligent misrepresentation, conversion, deceptive trade practices, and violations of the Maryland Securities Act (three counts), federal Securities and Securities and Exchange Act (four counts), federal Investment Advisors Act, and California Corporate Securities Law violations, and civil conspiracy. ECF No. 1 ¶¶88-215.

Ellen Carroll remanded Topiwala's suit to this Court.  No. 11-bk-29314-EC (document filed July 12, 2011).

On July 13, 2011, Judge Carroll granted the Topiwala plaintiffs' motion for relief from the automatic litigation stay, instituted when Mitchell entered bankruptcy protection. *Id.* (document filed July 13, 2011).  On July 19, 2011, Mitchell appealed the lifting of the stay.  ECF No. 16.  He did not move for a stay of the order pending appeal.  *See* ECF No. 16.

On November 18, 2011, the defendants moved to dismiss Topiwala's suit for improper venue, or to transfer venue.  ECF No. 17.  The plaintiffs opposed that motion.  ECF No. 18.[4]

II.  Analysis

A.  The Bankruptcy Stay

The defendants contend that Mitchell's appeal of Judge Carroll's order lifting the stay continued the stay.  ECF No. 17 Attach. 1 at 3.  An order lifting the automatic stay is not suspended pending appeal of that order.  *See* Fed. R. B. P. 4001; 8005.[5]  Accordingly, Judge Carroll's order lifting the stay is effective--litigation may proceed against Mitchell.[6]

_____

[4] On November 30, 2011, Washington Superior Court Judge Scott R. Sparks entered Summary Judgment for Prestwick Property Holdings on a promissory note from Alps and a trust, ACU.  ECF No. 18 Attach. 1 Ex. A.

[5] Judge Carroll recognized this during the hearing on the stay, and distinguished the difference between filing an appeal and

B.   Motion to Dismiss for Nonjoinder

Under Fed. R. Civ. P. 12(b)(7), the Court may dismiss an action if a necessary party cannot be joined and is indispensable to resolution of the action.  The Court first considers whether an absent party is necessary under Fed. R. Civ. P. 19(a).[7]  If so, the Court considers whether joinder is possible.  If joinder is possible, the Court will order that the party be joined.  If joinder is not an option, the Court considers, under Rule 19(b),[8] whether to proceed without the

---

staying enforcement of her order.  ECF No. 17 Attach. "B" at 12:10-12.

[6] Further, Wessell and Companies Incorporated moved to dismiss for nonjoinder.  ECF No. 10.  Neither is in bankruptcy, and the stay does not affect them.

[7] Under Fed. R. Civ. P. 19(a)(1), a party is necessary to the action if:

> (A) In [their] absence the court cannot accord complete relief among the existing parties; or
> (B) [They] claim an interest in the subject of the action and are so situated that disposing of the action without them may:
>> (i) . . . impair or impede [their] ability to protect the interest; or
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

[8] Under Fed. R. Civ. P. 19(b), when a necessary party cannot be joined, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties."  The Court considers whether:

> (1) Judgment will prejudice the absent or existing parties;

party or dismiss the action. *Owens-Ill., Inc. v. Meade*, 186 F.2d 435, 440 (4th Cir. 1999). A party cannot be indispensable unless it is necessary, but not all necessary parties are indispensable. *Schlumberger Indus. v. Nat'l Sur. Corp.*, 36 F.3d 1274, 1285-86 (4th Cir. 1996).

The defendants bear the burden of showing that the party is necessary and indispensable. *R-Delight Holding LLC v. Anders*, 246 F.R.D. 496, 499 (D. Md. 2007). The decision to dismiss is in the Court's sound discretion, and it will order dismissal only when "serious prejudice or inefficiency will result" from hearing the action without the party. *Id.; RPR & Assocs. v. O'Brien/Atkins Assocs, P.A.*, 921 F. Supp. 1457, 1463 (M.D.N.C. 1995) (*cited in Owens-Ill.*, 186 F.2d at 441).

> 1. Mitchell

Wessell and Companies Incorporated contend that the litigation cannot proceed without Mitchell, but the pendency of the stay on litigation prevents action against an indispensable party. ECF No. 10 at 1. As noted above, the automatic stay has been lifted. ECF No. 16 Ex. B. Accordingly, Mitchell's bankruptcy proceedings do not prevent prosecution of this case, and he is not absent.

---

(2) Any prejudice can be reduced or avoided;
(3) Judgment will be adequate without the absent party;
(4) The plaintiff will have an adequate remedy if the action is dismissed.

9

2.   Alps

Wessell and Companies contend that Alps is necessary to the action, but acknowledge that joinder will not destroy diversity jurisdiction.  ECF No. 10 Attach. 1 at 5-6.  They apparently concede that joinder is possible.[9]  Accordingly, dismissal will not be required.  The Court need only consider whether Alps is necessary.  *See* Fed. R. Civ. P. 19.

i.   Double or Inconsistent Rulings

Wessell and Companies assert that if the Court hears this action without Alps, a judgment in the plaintiffs' favor may conflict with the judgment in a Washington State action they claim is related or the declaratory judgment action holding that Alps is not liable to the plaintiffs.  ECF No. 10 Attach. 1 at 7.[10]

The plaintiffs here seek compensatory and punitive damages against Wessell, Mitchell, and Companies Incorporated.  ECF No. 1.  Almost every claim in the complaint alleges that the plaintiffs chose a particular bank and account to invest the IP proceeds because of the *defendants'* omissions and false statements of fact, and the defendants should be responsible for

---

[9] The defendants do not address personal jurisdiction over Alps. *See* ECF No. 10 Attach. 1 at 5-6; ECF No. 14 at 4 (The plaintiffs should be required to "amend[] . . . [the] complaint to add Alps.").

[10] As the defendants note, no parties in that action are parties to this one.  ECF No. 19 at 9.

10

the lost funds and pay punitive damages. *See id.* The complaint does not allege that Alps is directly or indirectly liable to the defendants. Accordingly, a finding that the defendants are liable in this action will not conflict with a finding in another action that Alps is not liable to the plaintiffs.[11]

Further, a plaintiff need not join all joint tort-feasors as defendants in a single lawsuit, because liability is joint and several. *Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 7 (1990). That the plaintiffs suggested Alps was a joint tort-feasor and conspirator with the defendants does not make it a necessary party to this action. *See Marshall v. James B. Nutter & Co.*, No. RDB-10-3596, 2011 WL 4566119 at *5 (D. Md. Sept. 29, 2011) ("Rule 19 does not mandate joinder of co-conspirators.").

ii.   Impairment of Alps's Interest

Wessell and Companies contend that Alps holds property that the plaintiffs seek in this case, and Alps cannot protect that property against the plaintiffs' claims unless it is a party to the action. ECF No. 10 Attach. 1 at 7.

The plaintiffs seek monetary damages in this case, not return of property. *E.g.* ECF No. 1 ¶99. Accordingly, this

---

[11] The Washington State case is premised on a defaulted promissory note and makes no allegations related to the eSavings account involved in this litigation. *See* Notice of Removal, Ex. 2 (not filed electronically). Accordingly, there is no threat of inconsistent holdings here. *R-Delight Holding*, 246 F.R.D. at 504 (possibility of inconsistent judgments when both courts are asked to decide the same issues).

action does not involve the adjudication of property in which a non-party has an interest.  *Cf. R-Delight Holding*, 246 F.R.D. at 499 (defendant's son was a necessary party because he "claim[ed] some right to the deposit and fees" sought in the action).

### iii. Res Judicata Effect on Alps

Finally, the defendants contend that principles of claim or issue preclusion will bind Alps in later actions.  ECF No. 10 Attach. 1 at 7.  Claim preclusion applies when there is "(1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of the parties or their privies in the two suits."  *Pueschel v. United States*, 369 F.3d 345, 354-55 (4th Cir. 2004).[12]

The defendants do not contend that they are accountable to Alps, and the Court will not allow the defendants to appear on Alps's behalf.  The plaintiffs also recognize that, though they contend Alps was a "sham business" under the defendants' control

---

[12] A non-party that is "so identified in interest with a party to former litigation that he represents precisely the same legal right in respect to the subject matter involved" is in privity with the original party.  *Martin v. Am. Bancorporation Ret. Plan*, 407 F.3d 643, 651 (4th Cir. 2005) (internal quotation marks and citation omitted).  "A non-party whose interests were adequately represented" by a party is in privity with that party because it was "virtual[ly] represent[ed]" by the party.  *Id.* The Fourth Circuit defines virtual representation "narrowly": if the parties to the first suit are not accountable to the nonparties, or the court does not tacitly approve the party to appear *on behalf of* the nonparty, the nonparty is not in privity with the party.  *Id.*

--rather than controlling the defendants--it was an independent, unregulated private business entity. ECF No. 13 at 7 n.3. Accordingly, claim preclusion will not affect Alps.

Issue preclusion, or collateral estoppel, bars relitigation of an issue when: (1) the issue is identical to one already litigated, (2) it was actually determined, (3) determination of the issue was necessary to the decision, (4) the prior judgment was final and valid, and (5) the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the earlier case. *Martin*, 407 F.3d at 653. Alps is not a party to this action, and will not have a full and fair opportunity to litigate in this case. Issue preclusion also will not apply.

Alps is not a necessary party. The motion to dismiss or order joinder will be denied as to Alps.

3.   Prestwick Property Holding, LLC

Wessell and Companies contend that the plaintiffs' "failure to name Prestwick Property Holding, LLC, . . . as plaintiff is . . . cause for dismissal." ECF No. 10 at 2. They explain only that the "Court may properly inquire as to why Prestwick is not a named Plaintiff in this case." ECF No. 10 Attach. 1 at 8. The defendants do not argue that Prestwick is necessary, or that joinder would be impossible. *See* ECF No. 10; ECF No. 10 Attach.

1; ECF No. 14.[13]  The defendants have not met their burden and the Court will not order Prestwick's joinder, or dismiss the action.

    C.   Motion to Dismiss or Transfer Venue

    Under Fed. R. Civ. P. 12(g)(2), a party that makes a Rule 12 motion "must not make another motion under [Rule 12] raising a defense or objection that was available to the party but omitted from its earlier motion."  Companies and Wessell could have moved to dismiss or transfer venue in their earlier motion. Accordingly, they have waived the motion to transfer venue and to dismiss for this Court's lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(g)(2); *id*. 12(b)(2)-(3).  As Mitchell did not join the motion to dismiss for nonjoinder, *see* ECF No. 10, he may be heard on the motion to dismiss or transfer.

    D.   Personal Jurisdiction

    Mitchell raised lack of personal jurisdiction for the first time in his reply to the opposition to his motion to dismiss for

---

[13] In the motion to dismiss or transfer venue, the defendants noted in passing that Prestwick "actually lent the money to Alps from the IP proceeds."  ECF No. 17 Attach 1 at 8. In support, they attached two certificates of service from a suit that Prestwick filed in Washington State against Alps and ACU Trust. ECF No. 17 Attachs. 3, 4.  Notably the defendants failed to raise this in the motion to dismiss for nonjoinder, and the certificates of service do not show that the Washington suit has any connection to the IP proceeds.  *See id*.

improper venue.  *See* ECF No. 19 at 2.[14]  Lack of personal

jurisdiction must be asserted by motion or in the answer. Fed.

R. Civ. P. 12(b).  The reply brief is not a motion.  Accord-

ingly, the defense has been waived.  *See Oladokun v. Grafton*

*School, Inc.*, 182 F. Supp. 2d 483, 491-92 (D. Md. 2002).[15]

     E.   Motion to Dismiss or Transfer for Improper Venue

     Under Fed. R. Civ. P. 12(b)(3), a complaint may be

dismissed for improper venue.  Under 28 U.S.C. § 1391(b),[16] venue

is proper in a judicial district where (1) any defendant

resides[17] if all defendants reside in the same state, or (2) a

---

[14] Mitchell discusses some contacts with California and the
defendants' residence in Los Angeles in the venue motion, but
mentions jurisdiction only to state that California courts have
personal jurisdiction over them.  ECF No. 17 Attach. 1 at 10,
14.  Wessell submitted a second affidavit "in support of motion
to dismiss for lack of personal jurisdiction."  ECF No. 17
Attach. 5.  Wessell waived that defense when he moved to dismiss
for failure to join an indispensible party. Fed. R. Civ. P.
12(g)(2).  Additionally, as noted above, the motion to dismiss
or transfer does not assert that Maryland lacks personal
jurisdiction over the defendants.

[15] Defendant did not raise an argument in its motion by raising
it for the first time in its reply brief.  *Oladokun*, 182 F.
Supp. 2d 491-92.  Affirmative defenses raised for the first time
in a reply brief are waived.  *See Curry v. City of Syracuse*, 316
F.3d 324, 330-31 (2d Cir. 2003); *see also Clawson v. FedEx
Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md.
2006).

[16] Because Topiwala asserts jurisdiction founded on diversity of
citizenship and federal question, 28 U.S.C. § 1391(b) applies.
ECF No. 1 ¶¶ 7-8.

[17] Contrary to the defendants' assertion, a corporation's
residence is relevant to the determination of proper venue.  *See*

15

substantial part of the events giving rise to the claim arose.

In considering a motion to dismiss for improper venue, courts

must "review the entire sequence of events" underlying the

claims. *Power Paragon, Inc. v. Precision Tech. USA, Inc.*, 605

F. Supp. 2d 722, 726 (E.D. Va. 2008).  It is sufficient that a

substantial part of the events occurred in a district, "even if

a greater part of the events occurred elsewhere." *Id.*

All inferences must be drawn in the plaintiffs' favor, and

"the facts must be viewed as [they] most strongly can plead

them." *Silo Point*, 578 F. Supp. 2d at 809.  Accordingly,

challenges to the facts in the complaint,[18] and declarations that

they are "not truthful [or] accurate"[19] are disregarded.

Mitchell emphasized in his motion that venue would be

proper in the Central District of California, but did not assert

that venue is improper in the District of Maryland.  *See* ECF No.

---

ECF No. 17 Attach. 1 at 11.  A corporation resides in "any jud-
icial district in which it is subject to personal jurisdiction
at the time the action is commenced."  28 U.S.C. § 1391(c).

[18] ECF No. 19 at 1-5.

[19] ECF NO. 19 Attach. 2 ¶3 (Wessell Aff.).  Wessell directs his
comments at Topiwala's opposition to the motion to dismiss for
improper venue, but they address facts pled in the complaint.
*Compare id. with* ECF No. 1 ¶¶22-26, 57, 68.  The Court also
disregards the numerous nonfactual comments and arguments in the
defendants' affidavits--an affidavit is a "declaration of *facts*"
only. Black's Law Dictionary "Affidavit" (2011) (emphasis
added); *Granada v. United States*, 51 F.3d 82, 84 (7th Cir.
1995).

16

17 Attach. 1 at 8-15.[20]  He also failed to assert that venue is improper in his reply.  *See* ECF No. 19.  Accordingly, Mitchell has not met his burden, and the motion will be denied.

    F.    Motion to Transfer Venue

    Under 28 U.S.C. § 1404(a),[21] "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Unless the balance of these factors[22] "is strongly in favor of the defendant, the

---

[20] The defendants assert that "most of the 'events or omissions'" took place in Los Angeles County, implying that a minority of the events occurred in Maryland.  ECF No. 17 Attach. 1 at 15. As the defendants recognize, 28 U.S.C. § 1391(b) "do[es] not require that a majority of the 'events or omissions' occur in the District where a suit is filed; nor that these events pre-dominate."  *Id.* at 12-13.  Accordingly, that most of the events occurred elsewhere is not determinative.

[21] This provision "was enacted to prevent the waste of time, energy and money as well as to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Dicken v. United States,* 862 F.Supp. 91, 92 (D. Md. 1994)(*citing Van Dusen v. Barrack,* 376 U.S. 612 (1964) and *Norwood v. Kirkpatrick,* 349 U.S. 29 (1955)).

[22] "[T]he statute provides no guidance as to the weight given . . . [to] . . . the factors[.]"  *Byerson v. Equifax Info. Servs., LLC,* 467 F. Supp. 2d 627, 632 (E.D. Va. 2006); 15 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3847 (2005) (collecting cases).  Some courts consider convenience the most important factor; others have stated that "[t]he interest of justice may be decisive . . . even though the convenience of the parties and witnesses point in a different direction."  *Byerson,* 467 F. Supp. 2d at 635; 15 Wright, Miller & Cooper, § 3854 (collecting cases).

plaintiff's choice of forum should rarely be disturbed."[23]   The moving party has the burden to show that transfer to another forum is proper.  *Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615, 617 (D. Md. 2002).

On a motion to transfer, the Court first asks whether the action could have been brought in the transferee district.[24]   If so, then the Court considers: (1) the weight accorded plaintiff's choice of venue, (2) witness convenience and access, (3) convenience of the parties, and (4) the interest of justice. *Mamani v. Bustamante*, 547 F. Supp. 2d 465, 469 (D. Md. 2008).[25]

---

[23]  *Collins v. Straight Inc.*, 748 F.2d 916, 921 (4th Cir. 1984)(*quoting Gulf Oil v. Gilbert*, 330 U.S. 501, 508 (1946)); *see also Mamani v. Bustamante*, 547 F. Supp. 2d 465, 469 (D. Md. 2008).

[24]  Transfer is proper when the transferee court is a proper venue and has personal jurisdiction over the defendants.  *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 630 (E.D. Va. 2003). The parties agree that the Central District of California is a proper venue and would have personal jurisdiction because all are residents of that jurisdiction.  ECF No. 17 Attach. 1 at 11; ECF No. 18 at 16.

[25] *See also Cross v. Fleet Reserve Ass'n Pension Plan*, 383 F. SUpp. 2d 852, 856 (D. Md. 2005); *Lynch*, 237 F. Supp. 2d at 617. Topiwala cites an 11 factor test for determining the convenience of the parties.  ECF No. 18 at 15-16.  "Courts have set forth various formulations of the analysis under § 1404(a).  The content of that analysis, however, remains largely consistent." *Eliot AmQuip, LLC v. Bay Elec. Co., Inc.*, No. ELH-10-3598, 2011 WL 2174893, *4 n.12 (D. Md. June 2, 2011) (*citing Stratagene v. Parsons Behle & Latimer*, 315 F. Supp. 2d 765, 771 (D. Md. 2005) (11 factor test); *Lynch*, 237 F. Supp. 2d at 617 (four factor test); 15 Charles Alan Wright et al., Federal Practice & Procedure § 3847 at 109 (3d ed. 2007) (courts apply different factors but the "approaches are quite similar overall")).

The Court's decision "turn[s] on the particular facts of the case," and "all the relevant factors to determine whether . . . on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Byerson*, 467 F. Supp. 2d at 632; 15 Wright, Miller & Cooper, § 3847. The decision to transfer is "committed to the discretion of the district court." *In re Ralston Purina Co.*, 726 F.2d 1002, 1005 (4th Cir. 1984); *Tech USA, Inc. v. Evans*, 592 F. Supp. 2d 852, 857 (D. Md. 2009).[26]

      1.  Weight Accorded to Topiwala's Choice of Venue

"Ordinarily, a plaintiff's choice of forum is entitled to substantial weight." *Lynch*, 237 F. Supp. 2d at 617. But, when the chosen forum is not the plaintiff's home or has little connection to the events giving rise to the litigation, less weight is given to the plaintiff's choice. *Tse v. Apple Computer*, No. 05-2149, 2006 WL 2583608 at *2 (D. Md. Aug. 31, 2006).

---

[26] In his reply, Mitchell cites the *forum non conveniens* factors for dismissal. ECF No. 19 at 6-7. Those factors are distinct from the factors considered on a motion to transfer venue. *CSS Antenna, Inc. v. Amphenol-Tuchel Elecs., GmbH*, 764 F. Supp. 2d 745, 755 (D. Md. 2011).

FastVDO is a resident of Maryland.[27]  Though Topiwala is
not a Maryland resident, he owns a home and spends about half
his time in Maryland.  ECF No. 18 Attach. 1 ¶1.  Topiwala was in
Maryland during almost all the alleged communications with the
defendants, and when he signed the eSavings agreement that he
alleges the defendants fraudulently induced.  *Id.* ¶¶5-10.
Accordingly, Topiwala's part-time home is, and many of the
events giving rise to the case occurred, in Maryland.  However,
Topiwala is not a full-time Maryland resident, and the
defendants' alleged actions occurred outside of Maryland.  *See*
ECF No. 1.  The first factor slightly favors Topiwala's choice
of forum.

   2. Witness Convenience and Access

 "The party asserting witness inconvenience has the burden
to proffer, by affidavit or otherwise, sufficient details
respecting the witnesses and their potential testimony to enable
the court to assess the materiality of evidence and the degree
of inconvenience."  *Koh v. Microtek Int'l*, 250 F. Supp. 2d 627,

---

[27] A corporation is a resident of "any judicial district in which
it is subject to personal jurisdiction at the time the action is
commenced."  28 U.S.C. § 1391(c).  FastVDO's principal place of
business is in Maryland and is, accordingly, subject to personal
jurisdiction in Maryland.  Md. Code., Courts & Judicial Proceed-
ings, § 6-102.

636 (E.D. Va. 2003).[28]   Inconvenience of non-party witnesses has more weight than inconvenience of party witnesses, who are presumed willing to travel to another forum.   *Atl. City Assocs. No. 2, LLC v. Reale*, No. CCB-11-0078, 2011 WL 1769842 at *3 (D. Md. May 9, 2011).   When transferring venue will only "shift the balance of convenience" because the proposed venue will be inconvenient for the plaintiffs' witnesses, transfer is inappropriate.   *Bd. of Trs. v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1258 (E.D. Va. 1988) (*quoting E. Scientific Mktg. v. Tekna-Seal Corp.*, 696 F. Supp. 173, 180 (E.D. Va. 1988).

The defendants state in affidavits that they intend to call Wessell, Mitchell, and Casey Dalton-Lawrence.   ECF No. 17 Attachs. 3, 6.   They live in Los Angeles, California.   ECF No. 17 Attach. 3 ¶7.   Each will testify to statements of the defendants and Topiwala, the Alps website, and "the real estate

---

[28] *See also CoStar Realty Info., Inc. v. Meissner*, 604 F. Supp. 2d 757, 770 (D. Md. 2009) ("[T]he defendant should submit affidavits from witnesses and parties involved that explain the inconvenience and hardship he would suffer if the case were heard in the plaintiff's chosen forum.").   Any party asserting witness inconvenience must make a particularized showing.   *See Bd. of Trs. v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1258 (E.D. Va. 1988) ("Witness convenience is often dispositive in transfer decisions . . . [but it] cannot be assessed in the absence of reliable information identifying the witnesses involved and specifically describing their testimony.").

climate that affected the value of Mr. Topiwala's investment in Alps." *Id.* ¶7; ECF No. 17 Attach. 6 ¶8.

Topiwala also submitted an affidavit stating that he plans to testify about all the facts alleged in the Complaint, and he plans to call Joe Schmelzle, accountant for Topiwala and FastVDO, to testify about statements the defendants made in conversations with Schmelzle and Topiwala.  Schmelzle lives in Maryland.  ECF No. 18 Attach. 1 ¶¶11-13.

Two potential witnesses reside or spend time in Maryland, and three live in California.  *Id.* ¶¶2, 8; ECF No. 17 Attach. 3 ¶7.  Each side plans to call one non-party witness.  ECF No. 18 Attach. 1 ¶8; ECF No. 17 Attach. 3 ¶7(c).  All witnesses will likely testify to the statements that form the basis of all the claims.  *See* ECF No. 18 Attach. 1 ¶¶12-13; ECF No. 17 Attach. 3 ¶7.  Transferring the case to California will merely "shift the balance of convenience."  *Baylor Heating*, 702 F. Supp. at 1258. Accordingly, this factor favors keeping the action in Maryland.

        3.   Convenience of the Parties

The convenience of the parties supports transferring a suit when travel to the original venue for extended time will cause hardship on the defendants, and the plaintiffs will not suffer hardship in the proposed venue.  *Atl. City Assocs.* 2011 WL

1769842 at *3.[29]  If transferring venue merely "shift[s] the balance of inconvenience" to the plaintiffs, this factor favors retaining the suit in the original forum.  *Tech USA, Inc. v. Evans*, 592 F. Supp. 2d 852, 861 (D. Md. 2009).

The defendants have not asserted that litigating in Maryland will create a hardship.  *See* ECF No. 17 Attach. 1. Accordingly, this factor favors hearing the action in Maryland.

4.   Interest of Justice

The interest of justice "is intended to encompass all those factors bearing on transfer that are unrelated to convenience of witnesses and parties."  *Cross v. Fleet Reserve Ass'n Pension Plan*, 383 F. Supp. 2d 852, 857 (D. Md. 2005)(*quoting Baylor Heating*, 702 F. Supp. at 1260).  The possibility of consolidating the action with a pendent suit in the transferee forum is considered under this factor.[30]  *Baylor Heating*, 702 F. Supp. at 1260.  However, when two nearly identical suits are

---

[29] A defendant who shows by affidavit that continuing the proceeding in the original forum will cause a substantial interruption to his business, or a necessary witness must be "available on limited notice" at her job, has identified an insurmountable hardship justifying transfer.  *Atl. City Assocs*. 2011 WL 1769842 at *3.

[30] "Such factors may [also] include . . . the court's familiarity with the applicable law, docket conditions, access to premises that might have to be viewed, the possibility of unfair trial, the ability to join other parties and the possibility of harassment."  *Baylor Heating*, 702 F. Supp. at 1260.  This factor does not include the merits of the plaintiff's claims.

pending in different federal courts, "the case ought to be tried in the district court in which it was first filed," other factors being equal. *Ellicott Mach. Corp. v. Modern Welding Co., Inc.*, 502 F.2d 178, 180 (4th Cir. 1974).[31]

A court's familiarity with the applicable law is another factor to consider in the interest of justice analysis. *Lynch*, 237 F. Supp. 2d at 618. When state law applies in a diversity case, transfer to a district in the state whose law will govern the claims is favored.[32] This consideration is given "significantly less weight when the case involves basic or sufficiently well-established . . . issues of state law or when there is no reason to believe that the applicable law of the forum differs markedly from the law of the proposed transferee state." 15 Wright, Miller & Cooper, § 3854 at 287-289.

Mitchell's declaratory judgment action is based on the transactions underlying Topiwala's action. ECF No. 17 Attach. 1

---

[31] The first-to-file rule "should not be disregarded lightly," though it will be set aside if the first suit was filed in bad faith, in anticipation of the later suit, or to enable forum shopping. *Neuralstem, Inc. v. StemCells, Inc.*, 573 F. Supp. 2d 888, 900-01 (D. Md. 2008).

[32] *See Ugol v. Nemacolin Woodlands, Inc.*, WL 1230214, at *2 (D. Md. 2005)(*citing Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09, (1947)); 15 Wright, Miller & Cooper, § 3854 at 286 ("In diversity of citizenship cases, in which state law provides the substantive rule of decision, it generally is thought to be an advantage in having that law applied by federal judges who are familiar with the governing state law, and thus in trying the case in a district of the state whose law is to govern.").

at 3.   However, Topiwala filed this suit several months before
Mitchell filed the declaratory judgment action, and there is no
suggestion that Topiwala filed it in bad faith.[33]   *See*
*Neuralstem, Inc. v. StemCells, Inc.*, 573 F. Supp. 2d 888, 900-01
(D. Md. 2008).   Further, the Bankruptcy Court has deferred to
this Court to determine the action.   ECF No. 17 Ex. G at 11:24-
25.   Accordingly, the first-to-file rule favors hearing the
action in Maryland.

The action involves questions of federal, Maryland, and
California law.   *See* ECF No. 1 ¶¶88-215.   Accordingly, neither
state's law will govern the entire proceeding, and familiarity
of the laws does not determine where the interest of justice
lies.

5.   Balancing the Factors

No factor favors transferring the action to the Central
District of California.   The defendants had the burden of
showing that the balance of the factors "is strongly in favor of
the defendant[;] the plaintiff's choice of forum should rarely
be disturbed." *Collins v. Straight Inc.*, 748 F.2d 916, 921 (4th
Cir. 1984).   They have not carried this burden.   The motion to
transfer will be denied.

---

[33] The declaratory judgment action responds directly to
Topiwala's action, seeking a "declaratory judgment relating to
the validity, amount and dischargeability of any and all of the
causes that have been alleged against [Mitchell] in the Civil
Action."   ECF No. 17 Ex. C ¶16.

The defendants will have 14 days to file an answer to the complaint.  Fed. R. Civ. P. 12(a)(4)(A). .

III. Conclusion

For the reasons stated above, the defendants' motions to dismiss for improper venue and nonjoinder will be denied.

_____1/11/12_____

Date

_____

William D. Quarles, Jr.
United States District Judge

26